# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARGARET A. T., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-CV-376-JSD |
| ) | |
| FRANK BISIGNANO, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant.[1] ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Margaret A. T. ("Plaintiff") for Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB.

### I.    Background

Plaintiff protectively filed for DIB on February 21, 2022. (Plaintiff's Statement of Material Facts "PSUMF", ECF No. 9-1, ¶ 1) Plaintiff's request was initially denied on March 24, 2023 and, upon reconsideration, on August 1, 2023. (PSUMF, ¶ 2) A hearing before an ALJ was held on January 18, 2024, and the ALJ issued an unfavorable decision on April 1, 2024. (PSUMF, ¶ 4) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 12, 2020, the alleged onset date. (PSUMF, ¶ 36) The ALJ found that Plaintiff had the following severe impairments: supraspinatus and infraspinatus tendinopathy; superior labrum tear and moderate hypertrophic changes of the left shoulder; and osteoarthritis of bilateral hands.

---

[1] Frank Bisignano is now the Commissioner of Social Security. He is automatically substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).

(PSUMF, ¶ 37) And, the ALJ found Plaintiff had the non-severe impairments: obesity, Hashimoto's thyroiditis, and mandibular infection. (PSUMF, ¶ 38) The ALJ, however, found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (PSUMF, ¶ 39) The ALJ determined Plaintiff could perform the following RFC:

> light work as defined in 20 CFR 404.1567(b) except: The claimant cannot climb ladders, ropes, or scaffolds. With the left non-dominant upper extremity, the claimant is limited to frequent reaching front and laterally but no overhead reaching with the left upper extremity. She can engage in frequent fine and gross manipulation bilaterally.

(Tr. at 28). The ALJ determined that Plaintiff could perform her past administrative work as an administrative clerk. (Tr. 32) In the alternative, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 33-34)

Plaintiff filed a Request for Review of Hearing Decision/Order with the Appeals Council on May 7, 2024, which was denied on January 21, 2025. (PSUMF, ¶ 5) Plaintiff has exhausted all her administrative remedies and this case is ripe for review. *See* 42 U.S.C. § 405(g). As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II.     Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

2

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

#### A. Consideration of Plaintiff's Hashimoto's at Step Two.

The ALJ found at Step Two that Plaintiff had the following severe impairments: supraspinatus and infraspinatus tendinopathy, superior labrum tear and moderate hypertrophic changes of the left shoulder, and osteoarthritis of the bilateral hands (Tr. 27). The ALJ stated that Plaintiff's remaining, medically determinable impairments, including Hashimoto's' thyroiditis, were non-severe. (Tr. 27-28)

At step two, the ALJ made the following determination regarding Plaintiff's Hashimoto's:

> As to Hashimoto's thyroiditis, I first note that the claimant's alleged fatigue is the primary symptom. The record sometimes noted a diagnosis of chronic fatigue syndrome, but this appears to be related to her thyroid condition (see, e.g., Exhibit 4F/4, 6). The claimant alleged that this condition prevented her from getting a medical procedure to address her left shoulder (Exhibit 2E). The left shoulder effects have been considered below, as a component of the impairment. Aside from that, the record noted that her thyroid stimulating hormone was improving with medication/supplementation. She reported having some fatigue, though (Exhibit 4F/6). An ultrasound in December 2023 noted discrete nodules, but she was merely to follow-up in one year (Exhibit 14F/2). I further note that the claimant alleged that she had this impairment for a long time, yet she was able to work for almost 20 years since the diagnosis (see Exhibit 4E). Thus, I find it non-severe.
>
> (ECF No. 8-3 at 29)

That is, the ALJ gave three primary reasons for finding that impairment was non-severe: (1) improvement with medications and supplements; (2) a statement that Plaintiff did not need to follow up for one year; and (3) that she was able to work with the impairment. (Tr. at 28)

Plaintiff claims that her Hashimoto's did not improve with treatment. (ECF No. 9 at 4) Plaintiff notes that her TSH level increased from 31.230 in August 2021 to 58.30 in August 2023. (Tr. 444, 650) Doctors further noted that even when the TSH numbers decreased, then this improvement was considered "slight[]" and her condition remained "uncontrolled." (Tr. 427) Conversely, Plaintiff's fatigue did not improve with her medical treatment. (Tr. 492, 605, 689)

4

The ALJ referenced a thyroid sonogram and an accompanying note, stating that Plaintiff could follow-up in one year. (Tr. 682) The sonogram results stated that Plaintiff had "[e]nlarged heterogenous thyroid with more discrete nodules." (Tr. 682) Plaintiff asserts that she "continued to have thyromegaly and there was no indication that [her] Hashimoto's was controlled on this date." (ECF No. 9 at 5) A medical record noted that her TSH remained high, her Hashimoto's continued, and she could not get through a day without a nap. (Tr. 689) She had an Epworth Sleepiness Scale score of 16. (Tr. 690) Plaintiff contends that "the ALJ's reliance on the note found on the sonogram results fails to support the conclusion that [her] Hashimoto's was only a 'slight abnormality' and did 'not significantly limit' her ability to perform work." (ECF No. 9 at 5)

Plaintiff also takes issue with the ALJ's finding that Plaintiff "had this impairment for a long time, yet she was able to work for almost 20 years since the diagnosis" (Tr. 28) for several reasons. (ECF No. 9 at 5) Plaintiff states that she only worked part-time for the fifteen years prior to her disability hearing. (Tr. 44) Further, Plaintiff asserts the medical records show that her Hashimoto's worsened. (ECF No. 9 at 5-6) In August 2023, the medical note stated that her "fatigue has been severe x 3 years". (Tr. 606, 614) Plaintiff contends that the ALJ failed to recognize her worsening Hashimoto's over time. (ECF No. 9 at 6)

At step two, the Court must determine whether the applicant has an impairment or combination of impairments that are severe, *i.e.,* whether any of the applicant's impairments or combination of impairments significantly limit her physical or mental ability to do basic work activities. *John B. H. v. Saul*, No. 4:20-CV-04080-VLD, 2021 WL 1192930, at *16 (D.S.D. Mar. 30, 2021) (citing 20 C.F.R. § 404.1520(c)). At step two, it is the claimant's burden to demonstrate a (1) severe and (2) medically determinable impairment, but the burden is not

5

difficult to meet. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007); *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

An impairment is "medically determinable" if it results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1521. "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* If an impairment is medically determinable, then the Commissioner next considers whether it is severe. *Id.*

An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a). Basic work activities include, but are not limited to: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, use of judgment; responding appropriately to supervisors and co-workers and usual work situations, dealing with changes in a routine work setting, and understanding, carrying out, and remembering simple instructions. *Id.* at (b). At step two, only medical evidence is evaluated to assess the effects of an impairment on the ability to perform basic work activities. *See* Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (1985). "Therefore, subjective complaints by the claimant are normally not part of the step two analysis.*" John B. H.*, 2021 WL 1192930, at *18.

The Court notes that the ALJ found Plaintiff's thyroid disorder to be non-severe because she was able to work despite the conditions for many years, the medical evidence showed some improvement in her thyroid stimulating hormone levels with treatments, and she was recommended for limited follow-up care. (Tr. 28) Although Plaintiff testified that she only worked part-time in the 15 years preceding the alleged onset date of disability (Tr. 44), she

6

elsewhere told the Social Security Administration that she has been employed full-time. Specifically, in a June 2022 Disability Report - Adult, Plaintiff reported working as an office manager 40 hours per week from August 2009 until March 2020 (Tr. 216).

The Court finds that the ALJ appropriately found that Plaintiff's Hashimoto's was not severe at Step Two because it did not significantly limit her ability to do basic work activities, as evidenced by her ability to work for two decades with this diagnosis. *See Wagner v. Astrue,* 499 F.3d 842, 851 (8th Cir.2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints"). However, even if ALJ improperly determined that Plaintiff's Hashimoto's was not severe at Step Two, then the Court finds this to be harmless error based upon the ALJ's consideration of this impairment at Step Four. That is, the ALJ specifically noted that he had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (ECF No. 8-3 at 29) *See Murphy v. Colvin*, 7 F. Supp. 3d 917, 924 (N.D. Iowa 2014) (citing *Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) ("Reversal and remand is not required with regard to an error by the ALJ that does not affect the outcome of the claim.") Thus, any possible error in the ALJ's failure to find Plaintiff's Hashimoto's to be severe at Step Two is cured by the ALJ's consideration of Plaintiff's Hashimoto's at Step Four.

### B.  Consideration of Plaintiff's Hashimoto's at Step Four.

Plaintiff argues that the ALJ failed to provide a meaningful analysis of her Hashimoto's when the ALJ assessed the RFC at Step Four. (ECF No. 9 at 7) Plaintiff contends that the ALJ summarized some of Plaintiff's reports and medical evidence related to her severe impairments of supraspinatus and infraspinatus tendinopathy, superior labrum tear and moderate hypertrophic

7

changes of the left shoulder, and osteoarthritis of the bilateral hands but did not consider the impact of her Hashimoto's in assessing her RFC. (ECF No. 9 at 7) Plaintiff maintains that the medical records indicated the results of Plaintiff's thyroid function tests were a barrier to her left shoulder surgery (Tr. 436) but it was unclear whether the ALJ considered her Hashimoto's when assessing her RFC. (ECF No. 9 at 7-8) Similarly, Plaintiff complains that the ALJ discounted her subjective complaints regarding the effects of her Hashimoto's, without accounting for them in her RFC. (ECF No. 9 at 8) The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her statements about the severity of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 29) Plaintiff contends that the ALJ failed to explain the inconsistencies between the evidence and her severe Hashimoto's symptoms, namely her fatigue. (ECF No. 9 at 8) Plaintiff asserts that, despite the requirement to consider non-severe impairments at step four, the ALJ did not meaningfully consider her Hashimoto's when assessing her RFC. *Id*. Plaintiff states that the ALJ did not explain how Plaintiff could perform a light range of work, despite her pervasive fatigue whereby she had to nap daily. *Id*. Plaintiff argues that the ALJ's failure to consider her Hashimoto's in fashioning her RFC was not harmless; rather, the vocational expert indicated that an individual who required a one-hour nap each day would be unable to sustain competitive employment. (Tr. 59)

All medically determinable impairments, both severe and non-severe, must be considered when determining a claimant's ability to perform past work or other work. *Spicer v. Barnhart*, 64 Fed. App'x 173, 175 (10th Cir. 2003); 20 CFR 404.1545(e); SSR 96-8p, 1996 WL 374184, at *5 (1996). *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (substantial evidence

8

supported the ALJ's denial of benefits where the limitations the physician "expressed in his evaluation are not reflected in any treatment notes or medical records"); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("Evidence that both supports and detracts from the ALJ's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("Even if we would have weighed the evidence differently, we must affirm the denial of benefits if there is enough evidence to support the other side.").

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir.2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir.2004); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)) The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue,* 648 F.3d 605, 615 (8th Cir.2011). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir.2010) (quoting

9

*Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998)). "The ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir.1995). The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel,* 238 F.3d 981, 985 (8th Cir.2001); *see also Forte v. Barnhart,* 377 F.3d 892, 897 (8th Cir.2004).

Here, the opinion evidence of several physicians supported the ALJ's determination that Plaintiff's Hashimoto's did not affect her functional abilities. At the initial determination level, State agency medical consultant Donald Charles Nelson, M.D., acknowledged that Plaintiff had a thyroid disorder and it was moderately enlarged without tenderness on examination. (Tr. 61, 65) However, Dr. Nelson found that the "extent of [Plaintiff's] self reported functional limitations is not consistent with the totality of the objective evidence." (Tr. 64) Dr. Nelson found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, could stand and/or walk for 6 hours in an 8 hour workday, could sit for a total of 6 hours in an 8 hour workday, was limited due to slightly decreased range of motion and to prevent further injury and exacerbation of pain, and limited fingering on her right hand due to arthritis, which was causing pain and loss of strength. (Tr. 64-65) At the reconsideration level, Michael O'Day, D.O. considered the evidence and found that "the extent of [Plaintiff's] self reported functional limitations is not consistent with the totality of the objective evidence." (Tr. 71) Dr. O'Day agreed with the same functional limitations. (Tr. 71-72)[2] The ALJ generally adopted Dr. Nelson

---

[2] In her Reply, Plaintiff contends that the State agency consultants did not provide "any meaningful consideration of [Plaintiff's] thyroid impairment in providing their opinions of her functioning" and "nothing in the ALJ's evaluation of Dr. Nelson's and Dr. O'Day's opinions indicated that [Plaintiff's] Hashimoto's was a consideration in how they were assessed." (ECF No. 11 at 3 (citing Tr. at 31-32) This Court disagrees. Dr. Nelson noted that Plaintiff filed her initial claim for disability due to "[H]ashimoto's, torn labrum in the left shoulder, infection in jawbone, and bone spur in the left shoulder." (Tr. 62; *see also* Tr. 64 ("alleging disability due to [H]ashimoto's"). Likewise, Dr. O'Day noted that Plaintiff alleged disability due to "Hashimoto's thyroiditis/autoimmune" noted her symptoms included

and Dr. O'Day's findings, except that she accounted for greater and more specific manipulative limitations, *e.g.*, Plaintiff's ambisinister limitations. (Tr. 31-32)

Here, the Court finds the State agency medical consults' opinions support the ALJ's determination that Plaintiff was not disabled and that the ALJ properly discharged her duty to assess the record as a whole, resolve inconsistencies, and formulate an RFC that accounted for all of Plaintiff's limitations that were supported in the record. The Court holds that the RFC adequately and appropriately accounted for Plaintiff's limitations. The ALJ limited Plaintiff to performing work at a light exertional level and restricted her from climbing ladders, ropes or scaffolds; frequent reaching towards the front and laterally; no reaching overhead with her left, non-dominant, upper extremity; and frequent find and gross manipulation bilaterally. (Tr. 28) The ALJ presented a hypothetical question to the vocational expert reflecting Plaintiff's vocational profile and consistent with the RFC determination. (Tr. 55) The vocational expert opined that Plaintiff could perform her past relevant work as an Administrative Clerk (DOT 219.362.010, as well as other occupations that exist in the national economy. (Tr. 55-56) T

The Court finds that the ALJ fashioned the RFC to address Plaintiff's subjective complaints to the extent that they were supported in the record. Plaintiff, who bears the burden of proving her RFC, has not proven additional limitations. *See Eichelberger*, 390 F.3d at 591. The Court considered the opinions from the only two medical sources who provided findings regarding the functional impacts of Plaintiff's Hashimoto's: Dr. Nelson (Tr. 64-65) and Dr. O'Day (Tr. 71-73). The ALJ adopted their findings and fashioned a corresponding RFC. Plaintiff has not challenged Dr. Nelson's or Dr. O'Day's findings, and has effectively waived any such challenge. *See Dols v. Saul*, 931 F.3d 741, 747 (8th Cir. 2019) ("As an initial matter, it is not

---

"pain" and "weakness". (Tr. 70-72) Dr. O'Day also noted that Plaintiff's thyroid was "moderately enlarged without tenderness to palpitation." (Tr. 72) Thus, the Court cannot find that the Drs. Nelson and O'Day failed to consider Plaintiff's Hashimoto's when fashioning their opinions regarding her functioning.

clear that Dols challenged the ALJ's decision to give no weight to Kaley's opinion in the district court."). Thus, the Court finds that the RFC was based upon substantial evidence and affirms the decision of the Commissioner.

### IV.     Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Frank Bisignano, Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

_____<br>
JOSEPH S. DUEKER<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of November, 2025.